**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAYTI MYERS, | : | |
|     Plaintiff | : | No. 1:24-cv-00171 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| SUPERINTENDENT LAUREL | : | |
| HARRY, <u>et</u> <u>al.</u>, | : | |
|     Defendants | : | |

<u>**MEMORANDUM**</u>

Currently before the Court are a complaint, application for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP Application"), and motion to commence filed by pro se Plaintiff Rayti Myers ("Myers").  For the reasons set forth below, the Court will grant the IFP Application, deem the motion to commence withdrawn, and dismiss the complaint with leave to amend only certain claims.

## I.    BACKGROUND

Pro se Plaintiff Rayti Myers ("Myers") commenced this action by filing a complaint that the Clerk of Court docketed on January 30, 2024.  (Doc. No. 1.)  In the complaint, Myers names as Defendants: (1) former Superintendent of Pennsylvania State Correctional Institution Camp Hill ("SCI Camp Hill") and now Secretary of the Commonwealth of Pennsylvania Department of Corrections ("DOC"), Laurel Harry ("Harry"); (2) Michael Gourley ("Gourley"), current Superintendent of SCI Camp Hill; (3) Miranda Brechbiel ("Brechbiel"), Jennifer L. Digby ("Digby"), and Bradley Ritchey ("Ritchey"), current and former Unit Managers at SCI Camp Hill; (4) Betty Lou R. Mihal ("Mihal") and Lt. Border ("Border"), Security Lieutenants at SCI Camp Hill; (5) D. Varner ("Varner"), the DOC's Chief Grievance Coordinator; (6) Tanya Heist

("Heist"), the Facility Grievance Coordinator for SCI Camp Hill; and (7) J. Schneck

("Schneck"), the Hearing Examiner ("HEX") for SCI Camp Hill.  (Id. at 1–4.)

Myers alleges that on April 5, 2022, Digby issued a misconduct against him for

borrowing property and for using a telephone after his fifteen (15)-minute call period had

expired.  (Id. ¶ 15.)  He was placed on cell restriction (a/k/a "first daily activity") until such time

as he saw the HEX.  (Id. ¶ 16.)  Digby also suspended Myers's "IPIN" ("Individual Personal

Identification Number"), which Myers would use to make telephone calls.  See (id.).

Mihal "investigated" the misconduct, and Myers later "plead [sic] guilty" to the charges

of unauthorized use of a phone and borrowing property.  See (id.).  As a sanction, Myers lost his

telephone privileges for twenty-one (21) days.  (Id.)  Myers contends that Mihal and Digby

conspired to suspend his IPIN prior to discipline being imposed against him.  (Id.)  He also

claims that his cell restriction prior to the imposition of discipline violated his due process rights.

(Id.)

On April 21, 2022, Myers was called into Brechbiel's office "to be issued an informal

resolution."  See (id. ¶ 17.)  Myers refused to sign the informal resolution, and he requested "to

be sent to the HEX."  See (id.).  Despite this request, Brechbiel issued a sanction against Myers

after he left her office.  (Id.)  Myers contends that the issuance of a sanction was against DOC

policy and violated his due process rights.  (Id.)  Myers appealed from Brechbiel's action to the

Program Review Committee.  (Id.)  He also filed a grievance against Brechbiel which was

assigned to Ritchey.  (Id.)

Myers received another misconduct on May 30, 2022, and was placed on cell restriction

thereafter by Border.  (Id. ¶ 18.)  In addition, Myers' IPIN was "suspended without cause"

insofar as he had not been formally sanctioned prior to this suspension, which violated DOC

policy as well as his due process rights. <u>See</u> (<u>id.</u>). This misconduct was eventually dismissed. (<u>Id.</u>) Myers asserts that the misconduct was issued "in retaliation of [his] previous contact with . . . Border as well as . . . Brechbiel." <u>See</u> (<u>id.</u>).

On June 24, 2022, Myers received a misconduct, was placed on cell restriction "for the same charges," and again had his IPIN suspended before he was formally sanctioned. <u>See</u> (<u>id.</u> ¶ 19). Several days later, he received a hearing during which the misconduct was dismissed. (<u>Id.</u>)

Myers indicates that "on each of these occasions," he filed an initial grievance to Heist, who dismissed them. <u>See</u> (<u>id.</u>). He then proceeded to grieve to Harry and/or Gourley, who also "dismissed" his grievances. <u>See</u> (<u>id.</u>). He finally appealed to Varner, who affirmed the prior dismissals of his grievances. (<u>Id.</u>)

Myers argues that being placed on cell restriction and having privileges terminated prior to being "seen by the HEX" violates DOC polices as well as his due process rights. <u>See</u> (<u>id.</u> ¶ 20). He asserts that Mihal and Digby suspended his IPIN several times "without cause or provocation," and Heist, Harry "and/or" Gourley, and Varner conspired together to deny his due process rights and violate his First Amendment "right to regress [sic]." <u>See</u> (<u>id.</u>). Myers further asserts that the suspensions of his telephone privileges, which prohibited him from communicating with his family and friends (and is "essential for his mental health") violate his rights under the First Amendment. <u>See</u> (<u>id.</u> ¶¶ 21, 23). Overall, it appears that Myers asserts causes of action under 42 U.S.C. § 1983 against Defendants in their official and individual capacities for (1) violations of his substantive and procedural due process rights under the Fifth and Fourteenth Amendments of the United States Constitution; (2) retaliation in violation of the First Amendment; and (3) violations of his First Amendment rights through the suspensions of his telephone privileges. (<u>Id.</u> at ¶¶ 20–26.) He also appears to assert a cause of action based on

Defendants' violations of his rights under the Pennsylvania Constitution.  (Id. ¶ 20.)  He claims

that he suffered "from mental and emotional" injuries due to Defendants' conduct.  See (id. ¶ 27.)

For relief, Myers seeks monetary damages and an injunction prohibiting prison officials at SCI

Camp Hill from imposing sanctions, such as cell restrictions, prior to inmates receiving formal

hearings.  (Id. ¶¶ 28–29.)

When Myers filed his complaint, he neither remitted the filing fee nor applied for leave to

proceed in forma pauperis.  As such, an Administrative Order was entered on January 31, 2024,

requiring Myers to either remit the fee or seek leave to proceed in forma pauperis.  (Doc. No. 4)

On February 2, 2024, Myers submitted a completed Section 1983 complaint form, his IFP

Application, and a prisoner trust fund account statement.[1]  (Doc. Nos. 5–7.)  He later filed a

"Motion to Commence and/or Move the Proceeding" that was docketed on December 20, 2024.

(Doc. No. 9.)

## II.    LEGAL STANDARDS

### A.    Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case

"without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that

---

[1]  Although the "supplement" to the complaint (Doc. No. 5) was docketed after the document this
Court has referred to as the complaint in this case (Doc. No. 1), it appears that Myers intended to
file the "supplement," i.e., the form Section 1983 complaint, but attach to it his complaint, which
contained his factual allegations and legal theories.  See (Doc. No. 5 at 6 ("Plaintiff is submitting
an accompanying complaint in order to present all pertinent facts . . . .")).  Myers's supplement
does not add any substantive allegations, legal claims, or requests for relief; instead, it merely
incorporates his original complaint.  See (Doc. No. 5 at 6–7).

includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[2]  See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris, 293 F. App'x at 131–32 (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence."  See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'"  See Mauro v. N.J. Supreme Ct. Case No. 56,900, 238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)).  Some district courts have explained that all a litigant needs to show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life.  See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is

---

[2]  While the Court recognizes that Myers is incarcerated, "[t]he reference to prisoners in § 1915(a)(1) appears to be a mistake.  In forma pauperis status is afforded to all indigent persons, not just prisoners."  See Douris v. Middletown Twp., 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

**B.      The Court's Screening of the Complaint Under 28 U.S.C. §§ 1915A and 1915(e)(2)**

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. § 1915A(b)(1). The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis. See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires

more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2).  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).  This means the court must "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  See Mala, 704 F.3d at 244.  However,

pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

### C.    Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

## III.    DISCUSSION

### A.    The IFP Application

After reviewing the IFP Application as well as Myers's prison trust fund account statement, it appears that Myers is unable to pre-pay the costs of this civil rights action.

Therefore, the Court will grant the IFP Application and allow him to proceed in forma pauperis in this case.[3]

### B.    Myers's Motion to Commence

Myers filed a motion to commence this action (Doc. No. 9); however, he never filed a brief in support of the motion in accordance with the Local Rules.  See M.D. Pa. L.R. 7.5 ("Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion .... If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn.").  Therefore, the Court will deem this motion withdrawn.

### C.    Screening of the Complaint

#### 1.    Section 1983 Official-Capacity Claims for Monetary Damages

Myers asserts Section 1983 claims for monetary damages against Defendants in their official capacities.  See (Doc. No. 1 at 1, 9).  The Eleventh Amendment of the United States Constitution bars these claims.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." See U.S. Const. amend. XI.  This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court.  Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by

---

[3]  However, because Myers is a prisoner, he is advised that he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act ("PLRA"), regardless of the outcome of this action.  See 28 U.S.C. § 1915(b).

the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (quoting

Alden v. Maine, 527 U.S. 706, 751 (1999)).

Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC, as an agency of the Commonwealth of Pennsylvania, is entitled to the Commonwealth's Eleventh Amendment immunity. See 71 P.S. § 61(a) ("The executive and administrative work of this Commonwealth shall be performed by the . . . Department of Corrections . . . ."); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC.

The Eleventh Amendment also bars claims for monetary relief against state officials acting in their official capacities because such claims are essentially claims against the employing government agency. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); A.W. v. Jersey City Pub. Schs., 341 F.3d 234, 238 (3d Cir. 2003) (explaining that Eleventh Amendment immunity "extends to state agencies as well as state officials sued in their official capacities for monetary damages"). Therefore, the Eleventh Amendment bars Myers's Section 1983 official-capacity claims for monetary damages against Defendants because such claims are essentially claims against the Commonwealth of Pennsylvania.

The Court recognizes that "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against

individual state officers for prospective injunctive and declaratory relief to end an ongoing

violation of federal law." See Pa. Fed'n of Sportsmen's Clubs, 297 F.3d at 323 (citation

omitted). As for the first exception to Eleventh Amendment immunity, Congress did not intend

to abrogate Eleventh Amendment immunity by enacting Section 1983. See Quern v. Jordan, 440

U.S. 332, 344–45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate

on its face an intent to sweep away the immunity of the States; nor does it have a history which

focuses directly on the question of state liability and which shows that Congress considered and

firmly decided to abrogate the Eleventh Amendment immunity of the States"). Concerning the

second exception, the Commonwealth of Pennsylvania has not waived its Eleventh Amendment

immunity from suit in federal courts. See 42 Pa. C.S. § 8521(b) ("Nothing contained in this

subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal

courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); see

also Lavia v. Pa., Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania

has not waived its Eleventh Amendment immunity). As for the final exception, even though

Myers also seeks prospective injunctive relief, it does not affect whether his Section 1983

official-capacity claims for damages against Defendants are viable.[4]  Accordingly, the Court will

dismiss Myers's Section 1983 official-capacity claims for monetary damages against Defendants

because they are barred by the Eleventh Amendment.[5]

---

[4]  Unlike claims for monetary damages, Section 1983 plaintiffs may seek prospective injunctive
and declaratory relief against Defendants in their official capacities. See Wheeling & Lake Erie
Ry. Co. v. Pub. Util. Comm'n of Pa., 141 F.3d 88, 91 (3d Cir. 1998) (explaining that one of the
two (2) exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states
and their officials is that "parties may sue state officers for prospective injunctive and declaratory
relief" (citing, inter alia, Ex parte Young, 209 U.S. 123 (1908))).

[5]  Even if the Eleventh Amendment did not apply here, Myers's official-capacity claims for
monetary damages against Defendants are implausible because "officials acting in their official

## 2.    Myers's Request for Injunctive Relief

Myers seeks an injunction prohibiting "the unlawful practice of giving sanctions (SCI Camp Hill – first daily activity) to individuals prior to any type of hearings for misconduct discontinued." See (Doc. No. 1 at 9–10).  The Court will dismiss as moot this request for injunctive relief.

Myers is no longer incarcerated at SCI Camp Hill; instead, he is currently incarcerated at Pennsylvania State Correctional Institution Dallas.  (Doc. No. 8).  "A prisoner's transfer from the prison complained of generally moots [their] claims for prospective injunctive relief." Conway v. Rivello, No. 24-cv-00427, 2025 WL 308129, at *6 (M.D. Pa. Jan. 27, 2025) (citing Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003), as amended (May 29, 2003); Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993)).  The exception is "when a challenged action is (1) too short in duration 'to be fully litigated prior to its cessation or expiration'; and (2) 'there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again.'" See Sutton, 323 F.3d at 248 (emphasis added) (quoting Abdul-Akbar, 4 F.3d at 206).

In this case, Myers's request for injunctive relief is limited to SCI Camp Hill and all Defendants involved in the allegedly unlawful practice of issuing sanctions to prisoners prior to misconduct hearings are DOC employees at SCI Camp Hill.  (Doc. No. 1 ¶ 29.)[6]  Thus, Myers's

---

capacities" are not "persons" subject to liability under Section 1983.  See Will, 491 U.S. at 71. However, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.  The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." See Hafer v. Melo, 502 U.S. 21, 31 (1991).

[6]  In the portion of his complaint titled, "Conclusion," Myers also references Pennsylvania State Correctional Institution Huntingdon ("SCI Huntingdon").  See (id. at 10 ("[T]he issues presented in this complaint have been on-going [sic] in these [sic] (SCI Camp Hill ('first daily activity') & SCI Huntingdon ('swifts')[,] which is against the [DOC's] policies and procedures and a violation of Plaintiff's due process.").  Although he references SCI Huntingdon in his

request for injunctive relief became moot upon his transfer from SCI Camp Hill.  Moreover, his request does "not implicate the exception to mootness."  See Washington v. Gilmore, No. 21-2876, 2022 WL 1073873, at *1, 2 (3d Cir. Apr. 11, 2022) (concluding that plaintiff prisoner's requests for injunctive relief, which included "a prohibition on the use of sick call refusal cards for inmates in the Secure Residential Treatment Unit where he was housed," was mooted by his transfer to a different correctional facility and his allegations did not meet the requirements for the mootness exception).  Accordingly, the Court will dismiss as moot Myers's request for injunctive relief whether asserted under Section 1983 or for any alleged violation of the Pennsylvania Constitution.

### 3.    Section 1983 Individual-Capacity Claims

### a.    Myers's Request for Compensatory Damages

Myers "seek[s] monetary relief for the mental and emotional injuries that he suffered which caused [him] to have irremediable thoughts (mental health) about his family health and well-being during Covid."  See (Doc. No. 1 ¶ 29).  Under the PLRA, a prisoner such as Myers is precluded from pursuing a federal civil action seeking damages for mental or emotional injuries without allegations showing that he also suffered a physical injury.  See 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."); see also Mitchell v. Horn, 318 F.3d 523, 536 (3d Cir. 2003) (holding that a plaintiff filing a federal civil action seeking compensatory damages for mental or emotional injury must allege

---

"Conclusion," there are no factual allegations pertaining to any events which occurred at SCI Huntingdon.  Nevertheless, even if there were such allegations, the Court would still dismiss Myers's request for an injunction for the reasons stated herein.

(and ultimately prove) that they suffered "a less-than-significant-but-more-than-<u>de minimis</u> physical injury").[7]  Myers does not include any allegations in the complaint that would remotely suggest that he suffered a "a less-than-significant-but-more-than-<u>de minimis</u> physical injury" because of the allegedly unconstitutional conduct he describes in his complaint.  <u>See</u> <u>Mitchell</u>, 318 F.3d at 536.  As such, he cannot recover compensatory damages for any Section 1983 violations, and the Court will dismiss his requests for compensatory damages against Defendants in their individual capacities under Section 1983.

### b.    Section 1983 Claim(s) Against Schneck

Preliminarily, the Court notes that it is unclear from the complaint how Schneck allegedly violated Myers's constitutional rights.  Myers's factual allegations against Schneck are limited to Schneck's position as the HEX for SCI Camp Hill (Doc. No. 1 ¶ 13) and the fact that he is "responsible for conducting inmate Misconduct [sic] hearings, Assessment [sic] hearings, Agency [sic] adjudication hearings, and serv[ing] as an impartial party in the inmate disciplinary hearing."  <u>See</u> (<u>id.</u>).  These sparse allegations are insufficient to allege that Schneck was personally involved in any constitutional violation, a requirement for liability under Section 1983.  <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil

---

[7] While Myers's failure to allege a physical injury precludes him from seeking compensatory damages, Section 1997e(e) does not preclude him from recovering nominal or punitive damages. <u>See</u> <u>Allah v. Al-Hafeez</u>, 226 F.3d 247, 251–52 (3d Cir. 2000) (explaining that Section 1997e(e) does not preclude a Section 1983 plaintiff from recovering nominal or punitive damages (citations omitted)); <u>cf.</u> <u>Mitchell</u>, 318 F.3d at 533 ("§ 1997e(e) does not apply to claims seeking injunctive or declaratory relief.").  Since Myers does not expressly reference punitive damages in the complaint, the Court has not addressed whether his allegations would support an award of punitive damages.  In addition, even though Myers does not mention nominal damages in his complaint, he does not need to do so to recover nominal damages at trial for any constitutional violations.  <u>See</u> <u>Allah</u>, 226 F.3d at 251 ("Although Allah does not expressly seek nominal damages in his complaint, this court has held that 'it is not necessary to allege nominal damages'" (quoting <u>Basista v. Weir</u>, 340 F.2d 74, 87 (3d Cir. 1965))).

rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of <u>respondeat superior</u>." (citations omitted)).  Therefore, the Court will dismiss Myers's Section 1983 claim(s) against Schneck for failure to state a claim on which relief may be granted.

### c.    First Amendment Retaliation Claim

Myers asserts that Defendants violated his First Amendment rights when they "harassed and issued [him] several misconducts for the same alleged activities (unauthorized use of phone and borrowing property) only to have the charges dismissed, but not before unlawfully terminating his IPIN denying him access to his family during a pandemic (Covid-19)."  <u>See</u> (Doc. No. 1 ¶ 24).  He also alleges that Border issued him a misconduct, placed him on "first daily activity," and suspended his IPIN on May 30, 2022, "in retaliation of [sic] [his] previous contact with . . . Border as well as . . . Brechbiel."  <u>See</u> (<u>id.</u> ¶ 18).  These allegations are insufficient to plead a plausible First Amendment retaliation claim against any Defendant.

To plead a plausible First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [them]."  <u>See</u> <u>Watson v. Rozum</u>, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted).  As for the first element of a plaintiff's retaliation claim, the filing of lawsuits and prison grievances constitute activity protected by the First Amendment. <u>See</u> <u>id.</u> (reiterating prior holding that a prisoner-plaintiff engages in constitutionally protected activity when they file a grievance against a prison official (citing <u>Mitchell</u>, 318 F.3d at 530)); <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002) (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of

the First Amendment's guarantee of free access to the courts" (citation omitted)); <u>Allah v. Seiverling</u>, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's First Amendment retaliation claim, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising [their] [constitutional] rights[.]"  <u>See</u> <u>Mitchell</u>, 318 F.3d at 530 (second alteration in original) (citations and internal quotation marks omitted); <u>Fantone v. Latini</u>, 780 F.3d 184, 191 (3d Cir. 2015), <u>as</u> <u>amended</u> (Mar. 24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights . . ." (citation omitted)).  However, to be actionable under Section 1983, the alleged adverse action must be more than <u>de</u> <u>minimis</u>.  <u>See</u> <u>McKee v. Hart</u>, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than <u>de</u> <u>minimis</u>" (citations and internal quotation marks omitted)).

And, finally, with respect to the third element, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive."  <u>See</u> <u>Watson</u>, 834 F.3d at 422.  The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."  <u>See</u> <u>id.</u> (footnote omitted).  A plaintiff's burden relating to this element is "very low at the pleading stage."  <u>See</u> <u>Edwards v. Houser</u>, No. 23-cv-01287, 2024 WL 3362276, at *5 (M.D. Pa. July 9, 2024) (citations omitted); <u>see also</u> <u>Mitchell</u>, 318 F.3d at 530 (explaining that "the word 'retaliation' in [the plaintiff's]

16

complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him"); Bendy v. Ocean County Jail, 341 F. App'x 799, 802 (3d Cir. 2009) (unpublished) ("To state a claim for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred." (internal quotation marks and citation omitted)).

Here, the Court understands Myers to assert a First Amendment retaliation claim against only Border because he does not include any factual allegations in his complaint that would reasonably infer that any other Defendant retaliated against him.[8]  Given this understanding, Myers fails to plead a plausible First Amendment retaliation because he does not allege that he engaged in constitutionally protected activity leading to the alleged retaliation or that Border had any reason to know about Myers's prior contact with Brechbiel.

Regarding Myers's claim against Border, he asserts that Border retaliated against him due to Myers's "previous contact" with him and Brechbiel.  See (Doc. No. 1 ¶ 18).  Putting aside the fact that the phrase "previous contact" is vague and does not describe any constitutionally protected activity, Myers's only factual allegation against Border relates to the issuance of the misconduct, suspension of IPIN, and placement on "first daily activity" on May 30, 2022.  See (id.).  There are no allegations that Myers and Border engaged in any contact prior to May 30, 2022, much less that Myers engaged in constitutionally protected activity which led to Border's actions on May 30, 2022.  See (id.).

---

[8]  Myers's use of the party designation "Defendants" does not excuse him from alleging facts showing that each Defendant was personally involved in violating his constitutional rights.  See Rode, 845 F.2d at 1207.

The Court recognizes that Myers alleges that he refused to sign off on an informal resolution when he went to Brechbiel's office on April 21, 2022, and he alleges that he filed a grievance against her.  See (id. ¶17).  The filing of a grievance is an activity protected by the First Amendment.[9]  See Watson, 834 F.3d at 422.  Nevertheless, it is unclear that this conduct, which occurred thirty-nine (39) days before Border issued a misconduct to Myers and sanctioned him, is the "previous contact" Myers references in his complaint.  Moreover, Myers does not aver any facts showing that Border would have been aware of his grievance against Brechbiel, as he alleges that Ritchey "was ordered to handle" Myers's grievance against her.  See (Doc. No. 1 ¶ 17).  "[T]he actor 'responsible for the alleged adverse actions' must have been aware of the conduct in question."  Smallwood-Jones v. Thomas Jefferson Univ. Hosps., Inc., No. 22-cv-03168, 2023 WL 1102333, at *4 (E.D. Pa. Jan. 30, 2023) (quoting Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007)); see also Hammond v. City of Wilkes Barre, 628 F. App'x 806, 808 (3d Cir. 2015) (unpublished) (explaining that "we have generally required that defendants in First Amendment retaliation actions be aware of the protected conduct in order to establish the requisite causal connection," and concluding that "we are not required to credit [the plaintiff's] bald assertion" that defendants "were aware of [his] protected activities" (citing Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002))).  Without factual allegations demonstrating that Border was aware of his grievance against Brechbiel, Myers's allegations do not pass the low bar to plausibly plead the causation element of a First Amendment retaliation claim.  Accordingly, the Court will dismiss Myers's First Amendment retaliation claim against Border for the failure to state a claim upon which relief may be granted.

---

[9]  On the other hand, it is unclear that Myers's refusal to sign off on an informal resolution constitutes protected activity.

### d.  First Amendment Free Speech and Association Claim

The Court understands Myers to assert that Digby and Border violated his First Amendment right to associate with his family and friends when they suspended his IPIN pending his disciplinary hearing on his misconduct charges.[10]  As explained below, Myers has failed to state a plausible claim for relief under the First Amendment

The First Amendment, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble."  See U.S. Const. amend. I; United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott, 463 U.S. 825, 831 (1983) (explaining that the First Amendment applies to states "by virtue of the Due Process Clause of the Fourteenth Amendment . . . .").  The Supreme Court "has 'long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others.'"  See Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 606 (2021) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 622, (1984)).  This First Amendment right of association "protects 'certain kinds of highly personal relationships,'" such as "a right to maintain certain familial relationships, including association among members of an immediate family . . . ."  See Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (quoting Roberts, 468 U.S. at 618); see also Webb v. Dep't of Just., 117 F.4th 560, 569 (3d Cir. 2024) ("The Constitution 'protects an individual's right to enter into and maintain certain intimate human relationships,' including the parent-child

---

[10]  Although Myers alleges that Brechbiel "issued . . . a sanction against [him] on April 21, 2022," he does not identify the nature of the sanction.  See (Doc. No. 1 ¶ 17).  Further, even though Myers avers that his IPIN was suspended on June 24, 2022, he does not indicate the individual who suspended his IPIN.  See (id. ¶ 19).  As such, the Court construes Myers's First Amendment claim as pertaining to only Digby and Border.

relationship." (quoting <u>Starnes v. Butler County Ct. of Common Pleas, 50th Jud. Dist.</u>, 971 F.3d 416, 431 (3d Cir. 2020))).

As for convicted prisoners, they "do not forfeit all constitutional protections by reason of their conviction and confinement in prison[,]" and, thus, they "clearly retain protections afforded by the First Amendment[.]"  <u>See</u> <u>O'Lone v. Est. of Shabazz</u>, 482 U.S. 342, 348 (1987) (citations omitted); <u>see also</u> <u>Pell v. Procunier</u>, 417 U.S. 817, 823 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with [their] status as a prisoner or with the legitimate penological objectives of the corrections system.").  Nevertheless, "freedom of association is among the rights least compatible with incarceration."  <u>See</u> <u>Overton</u>, 539 U.S. at 131.  As such, the right to associate "is sharply curtailed in prison.  But it is not extinguished altogether."  <u>See</u> <u>Webb</u>, 117 F.4th at 569 (citing <u>Overton</u>, 539 U.S. at 131); <u>see also</u> <u>Overton</u>, 539 U.S. at 131 ("We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration . . . .").  "Indeed, 'while the [Supreme] Court has sustained significant abridgments of prisoners' associational rights, . . . [those] sustained policies have often contained exceptions expressly privileging prisoners' communications with immediate family members.'"  <u>Webb</u>, 117 F.4th at 569 (alterations in original) (quoting <u>Tiedemann v. von Blanckensee</u>, 72 F.4th 1001, 1013 (9th Cir. 2023)); <u>see also</u> <u>Azzara v. Scism</u>, No. 11-cv-01075, 2012 WL 722342, at *6 (M.D. Pa. Mar. 1, 2012) ("Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with 'friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls.'" (quoting <u>Owens–El v. Robinson</u>, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978))).

Nevertheless, prisoners' incarceration necessarily limits "many privileges and rights," which is "justified by the considerations underlying our penal system." See O'Lone, 482 U.S. at 348 (citation omitted). These limitations "arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." See id. (citations omitted). "[The] evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination." Id. at 349 (citations and internal quotation marks omitted). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 89 (1987) (alteration omitted).[11] This standard "ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration . . . and[, additionally, it] avoids unnecessary intrusion of the judiciary into problems particularly ill[-]suited to resolution by decree." See O'Lone, 482 U.S. at 349–50 (citations and internal quotation marks omitted).

Here, Myers has not alleged any facts that would support a claim that the temporary restrictions on his telephone privileges are unrelated to legitimate penological interests, i.e.,

---

[11] Under Turner, the reasonableness of the prison regulation is analyzed using four (4) factors: (1) whether there is "a 'valid rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." See 482 U.S. at 89–90. This is a "'highly fact sensitive' inquiry[, which] is ill-suited to resolution on the complaint alone." See Webb, 117 F.4th at 569 (quoting Jones v. Brown, 461 F.3d 353, 364 (3d Cir. 2006)).

discipline for violating prison rules.[12]  He also does not allege facts about the limitations on his

ability to use a phone or otherwise communicate with family and friends during suspension of

his IPIN.  See Almahdi v. Ashcroft, 310 F. App'x 519, 522 (3d Cir. 2009) (unpublished)

("[P]risoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on

telephone privileges do not violate their First Amendment rights." (quoting Washington v. Reno,

35 F.3d 1093 (6th Cir. 1994))).  For instance, he does not allege that the suspension of his IPIN

prevented him from making any phone calls to family or friends, or whether he had alternative

means to communicate with friends and family outside of the prison.  See, e.g., Bryant v. Cortez,

536 F. Supp. 2d 1160, 1167 (C.D. Cal. 2008) (explaining that the "loss of telephone privileges

does not constitute a constitutional violation given the availability of alternative means of

communication by mail or in person").  He also does not allege the length of time that his IPIN

was suspended; instead, he merely avers that it was suspended.  Due to the absence of facts about

the alleged limitations on his telephone use and how those limitations interfered with his ability

to communicate, Myers fails to state a plausible First Amendment claim.  See Aruanno v.

Johnson, 568 F. App'x 194, 195 (3d Cir. 2014) (unpublished) (holding that conclusory

allegations "concerning [prisoner's] lack of phone access to friends and family" failed to state a

claim); see also Almahdi, 310 F. App'x at 522 (rejecting First Amendment claim based on

telephone restrictions where "Almahdi makes no assertion . . . that he lacked alternative means of

communicating with persons outside the prison" (citing Valdez v. Rosenbaum, 302 F.3d 1039,

1048 (9th Cir. 2002)).

---

[12]  Myers acknowledges that he ultimately pleaded guilty to the charges of unauthorized use of a
phone and borrowing property after issuance of the first misconduct against him.  See (Doc. No.
1 ¶ 16).

e.      **Fifth Amendment Due Process Claims**

Myers asserts that Defendants violated his due process rights under the Fifth Amendment when they sanctioned him prior to his misconduct hearings.  (Doc. No. 1 ¶ 26.)  The Fifth Amendment is inapplicable here because Myers does not allege (and could not plausibly allege) that any Defendant is a federal official, and the Fifth Amendment's Due Process Clause does not apply to state actors.  See Santos v. Sec'y of D.H.S., 532 F. App'x 29, 33 (3d Cir. 2013) (unpublished) ("[T]he Fifth Amendment applies to actions of the federal government, not state actions[.]" (citing Citizens for Health v. Leavitt, 428 F.3d 167, 178 n.11 (3d Cir. 2005))); see also Bergdoll v. City of York, 515 F. App'x 165, 170 (3d Cir. 2013) (unpublished) (dismissing plaintiff's Fifth Amendment claim against city and county officials because plaintiff did not allege wrongdoing by any federal actors).  Therefore, the Court will dismiss Myers's Section 1983 claims for violations of the Due Process Clause of the Fifth Amendment for the failure to state a claim upon which relief may be granted.

f.      **Fourteenth Amendment Due Process Claims Against Digby, Mihal, Brechbiel, and Border**

The Court understands Myers to assert that Digby, Mihal, Brechbiel, and Border violated his due process rights because, after issuing him misconducts, they sanctioned him by (1) placing him on "'first daily activity[,] which is basically cell restriction until you are seen by the HEX" and (2) suspending his IPIN, prior to the ultimate disposition of his misconduct charges.  (Doc. No. 1 at 4–6.)  He also asserts that these actions violated the DOC's internal policies and procedures.  See (id. at 5–8).  As explained below, Myers fails to plead a plausible claim for relief under the Due Process Clause of the Fourteenth Amendment against these Defendants.

The Fourteenth Amendment of the United States Constitution provides in pertinent part that: "No State shall . . . deprive any person of life, liberty, or property, without due process of

law." See U.S. Cons. amend. XIV, § 1. "The core concept of due process is protection against arbitrary government action [and, a]s that concept has developed, it has come to have both substantive and procedural components." Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 658 (3d Cir. 2011) (citing County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)). The substantive component "limits what government may do regardless of the fairness of procedures that it employs," see Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000), whereas the procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property." See Evans, 645 F.3d at 662.

### (1)    Procedural Due Process

The Court first addresses Myers's procedural due process claims. Myers, as with all prisoners, is "not completely deprived of the protections of the Due Process Clause simply because [he is a] prisoner[]." See id.; Sandin v. Conner, 515 U.S. 472, 485 (1995) (explaining that although prisoners "do not shed all constitutional rights at the prison gate, lawful incarceration 'brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system'" (internal citation omitted) (quoting Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977))). Thus, "[p]rocedural protections must be afforded to [prisoners] before they are stripped of the rights they still retain while incarcerated." See Evans, 645 F.3d at 662–63 (citation omitted).

There are two (2) scenarios in which a prisoner holds a liberty interest triggering due process protections:

> when "state statutes and regulations create a liberty interest in freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and (2) when "severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." See Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010) (internal quotation marks and citation omitted).

24

See Evans, 645 F.3d at 663.  These two (2) scenarios are characterized as a "'so-called state-created liberty interest'" and a "'so-called independent due process liberty interest,'" respectively.  See id. (quoting Renchenski, 622 F.3d at 325).

With respect to independent due process liberty interests, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon [them] and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  See Montanye v. Haymes, 427 U.S. 236, 242 (1976).  Thus, an independent due process liberty interest arises only "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing."  See Renchenski, 622 F.3d at 325.  Examples of such severe changes in conditions of confinement include, inter alia, "forced administration of antipsychotic medication, Washington v. Harper, 494 U.S. 210, 221–22 (1990), or involuntary transfer to a mental hospital, Vitek v. Jones, 445 U.S. 480, 492 (1980), or, for a prisoner not convicted of a sex offense, forced participation in sex-offender therapy, Renchenski, 622 F.3d at 326."  See Evans, 645 F.3d at 665 (first two citations altered from original).

Here, the Court is unable to discern an independent due process liberty interest in Myers's complaint.  Indeed, Myers's allegations do not show that due to the suspension of his IPIN or his placement on "first daily activity" or cell restriction after the issuance of misconduct charges against him, there has been a severe change to the conditions or degree of his confinement.  See id. (stating that "there is no indication that anything changed relating to [plaintiff's] conditions of confinement, let alone anything of a magnitude comparable to the following examples: the forced administration of antipsychotic medication, involuntary transfer

to a mental hospital, or for a prisoner not convicted of a sex offense, forced participation in sex-offender therapy"). Moreover, "[b]ecause disciplinary detention and administrative segregation [are] the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration, [a plaintiff's] transfer to less amenable and more restrictive quarters [does] not implicate a liberty interest protected by the Due Process Clause." See Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (alterations in original) (citations and internal quotation marks omitted); see also Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (stating that, in the context of an independent due process liberty interest, inmates transferred to a particular management unit "were not subjected to confinement that exceeded the sentences imposed upon them or that otherwise violated the Constitution, and therefore no liberty interest created by the Due Process Clause itself was impinged"). The same reasoning applies to the temporary suspension of a state prisoner's telephone privileges. See, e.g., Redmond v. Lytle, No. 16-cv-01804, 2017 WL 4875284, at *10 (M.D. Pa. May 26, 2017) ("Redmond does not have an independent due process liberty interest in being housed in general population, rather than a segregated or restricted housing unit, or in the denial of commissary, telephone, and visiting privileges for 90 days."), report and recommendation adopted, 2017 WL 4867392 (M.D. Pa. Oct. 27, 2017). Thus, because Myers does not allege that he was subject to conditions of confinement exceeding his sentence or that otherwise violated the United States Constitution he has not plausibly pleaded that he was deprived of an independent due process liberty interest.

Due to the lack of an independent due process liberty interest, Myers's allegations must give rise to a state-created liberty interest for him to sustain a plausible procedural due process claim. These types of interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See Sandin, 515 U.S. at 484 (internal citations omitted); Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (stating that, "[a]fter Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life'" (quoting Sandin, 515 U.S. at 484)); Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 559 (3d Cir. 2017) (explaining that, "in the conditions of confinement context," the liberty interest must be "substantial": "the right alleged must confer freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (internal quotations omitted)). A two (2)-factor inquiry informs whether prison conditions impose "atypical and significant hardship": "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." See Williams, 848 F.3d at 560 (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). Additionally, when determining whether a state-created liberty interest exists, courts are not to "compare the prisoner's own life before and after the deprivation." See Powell v. Weiss, 757 F.3d 338, 344 (3d Cir. 2014). Instead, "[t]he baseline for determining what is atypical and significant—the ordinary incidents of prison life—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." See id. (citations and internal quotation marks omitted).

In this case, Myers does not plead facts demonstrating that he had a state-created liberty interest because his allegations do not show that he was subject to an atypical and significant

hardship in relation to the ordinary incidents of prison life. Myers's placement on "first daily activity" or cell restriction for temporary periods, such as three (3) days from April 5–8, 2022, or for "several days" after June 24, 2022, pending his misconduct hearing, see (Doc. No. 1 at 4, 5–6), are not atypical and significant hardships. Courts have determined much more significant deprivations to be insufficient to establish an atypical and significant hardship on an inmate. See, e.g., Sandin, 515 U.S. at 486 (concluding that plaintiff inmate did not have protectable liberty interest when he was placed in segregated confinement for thirty (30) days); Smith, 293 F.3d at 654 (holding that placement in disciplinary confinement for seven (7) months "does not, on its own, violate a protected liberty interest as defined in Sandin"); Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997) (determining that placement in administrative custody without a due process hearing for fifteen (15) months was not atypical and significant hardship); Hill v. Harry, No. 21-cv-04084, 2021 WL 4360305, at *4–5 (E.D. Pa. Sept. 24, 2021) (concluding that placement in administrative segregation for "no more than one month" prior to a misconduct hearing is not "the type of atypical or significant hardship implicating a protected liberty interest"). Moreover, courts have repeatedly rejected the premise that a convicted inmate is entitled to a hearing before being placed on cell restriction or administrative segregation. See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (concluding that prisoner's twelve (12) days of pre-hearing confinement in segregated housing unit did not implicate state created liberty interest); Muhammad v. Wiley, No. 06-cv-01128, 2008 WL 4305779, at *4 (D. Colo. Sept. 18, 2008) (determining that inmate's placement in a special housing unit for ninety-eight (98) days prior to a disciplinary proceeding did not violate their due process rights), aff'd, 330 Fed. App'x 165 (10th Cir. 2009); Boyd v. Anderson, 265 F. Supp. 2d 952, 961 (N.D. Ind. 2003) ("Placing an inmate in disciplinary segregation, or in administrative segregation while disciplinary charges

28

pend against him, does not directly implicate the due process clause, nor does it generally work an atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life.").  Furthermore, even if Digby, Mihal, Brechbiel, and Border did not follow the DOC's policies and procedures in imposing cell restrictions and suspending Myers's IPIN prior to his misconduct hearing, those failures do not give rise to a due process claim because "failure to follow DOC policy does not, in and of itself, result in a violation of due process."  See Rambert v. Beard, No. 09-cv-00634, 2012 WL 760619, at *13 (M.D. Pa. Mar. 7, 2012) (citations omitted); Mack v. Clark, No. 21-cv-00004, 2022 WL 2669510, at *9 n.7 (W.D. Pa. July 11, 2022) ("The DOC's policies and procedures do not create a liberty interest protected by the Due Process Clause." (citations omitted)); see also Williams, 848 F.3d at 565 (pointing out that "whether Defendants were complying with DOC policy is irrelevant to our liberty interest analysis").

Myers's allegations regarding the suspension of his IPIN also do not sufficiently establish a deprivation of a liberty interest.  See McDowell v. Litz, 419 F. App'x 149, 152 (3d Cir. 2011) (unpublished) (concluding that plaintiff "had no protected [liberty] interest in . . . his phone privileges," which were suspended for ninety (90) days); Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 175 (3d Cir. 2007) (unpublished) ("[B]ecause the withdrawal of phone and visitation privileges for a limited period of time as a regular means of effecting prison discipline is not a dramatic departure from accepted standards for conditions of confinement, Castillo has no cognizable liberty interest for Fourteenth Amendment due process purposes."); Conklin v. Youngkin, No. 24-cv-00029, 2024 WL 289344, at *3 (M.D. Pa. Jan. 25, 2024) ("[R]estrictions, such as using the phone, yard, and shower, do not constitute protected liberty interests." (citing Goenaga v. MacDonald, No. 14-cv-02496, 2017 WL 1197882, at *6 (M.D. Pa. Feb. 15, 2017), report and recommendation adopted, 2017 WL 1178072 (M.D. Pa. Mar. 30, 2017))); Rosa-Diaz

v. Oberlander, No. 22-cv-00239, 2023 WL 6795805, at *3 (W.D. Pa. Oct. 13, 2023) (concluding

that plaintiff's loss of "telephone privileges, access to radio, [and] access to television and

gaming devices," did not amount to a due process violation because these "inconveniences do

not involve 'atypical and significant hardship' as compared to the ordinary incidents of prison

life"). Overall, Myers temporarily having his IPIN suspended (even if this constituted a total

loss of phone privileges) is not so atypical and harsh to constitute a deprivation of a protected

liberty interest. Accordingly, due to Myers's failure to plausibly allege any liberty interest

protected by the procedural component of the Due Process Clause, he fails to state a claim upon

which relief can be granted.[13]

### (2)    Substantive Due Process

As for Myers's substantive due process claims, the Court recognizes that "the Due

Process Clause contains a substantive component that bars certain arbitrary, wrongful

government actions regardless of the fairness of the procedures used to implement them." See

Foucha v. Louisiana, 504 U.S. 71, 80 (1992). To plead a plausible substantive due process claim,

a plaintiff must include sufficient allegations establishing "that the particular interest at issue is

protected by the substantive due process clause, and that the government's deprivation of that

---

[13] It is unclear whether Myers asserts that his due process rights were violated by what he believes were false misconduct reports issued against him on May 30, 2022, and June 24, 2022. If this is his intent, he fails to state a claim because "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," see Seville v. Martinez, 130 F. App'x 549, 551 (3d Cir. 2005) (unpublished), since "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." See Thomas v. McCoy, 467 F. App'x 94, 97 (3d Cir. 2012) (unpublished); see also Smith, 293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Moreover, Myers does not aver that he did not receive an opportunity to be heard regarding the misconduct charges. See (Doc. No. 1 ¶¶ 15–19 (alleging that he pleaded guilty to April 5, 2022 misconduct report and the misconducts issued on May 30, 2022 and June 24, 2022 were ultimately dismissed).

protected interest shocks the conscience."  See Kane v. Barger, 902 F.3d 185, 192 (3d Cir. 2018)

(citations and internal quotation marks omitted); see also Lewis, 523 U.S. at 847 (explaining that

plaintiff asserting substantive due process claim must allege conduct that is "arbitrary[] or

conscious shocking").  "This standard's stringency reflects maintenance of the proper

proportions of constitutional, as opposed to ordinary tort, violations."  Blain v. Twp. of Radnor,

167 F. App'x 330, 333 (3d Cir. 2006) (unpublished) (citing Lewis, 523 U.S. at 847 n.8).

In this case, Myers fails to state plausible substantive due process claims for three (3)

reasons.  First, and as explained above, he does not identify a protected interest at stake.  See

Wilkinson, 545 U.S. at 221.  Second, to the extent that Myers asserts substantive due process

claims based on the temporary suspension of his IPIN or any alleged retaliation, these claims fail

because of the "more-specific-provision rule," which provides that "if a constitutional claim is

covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the

claim must be analyzed under the standard appropriate to that specific provision, not under the

rubric of substantive due process."  See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260

(3d Cir. 2010) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).  These claims are

specifically covered by the First Amendment; as such, Myers cannot maintain separate

substantive due process claims based on this alleged conduct.

Third, Myers does not allege any conduct that shocks the conscience.  Being placed on a

form of cell restriction such as "first daily activity" for a temporary period pending a misconduct

hearing is not conduct that shocks the conscience.  See Benn v. Universal Health Sys., Inc., 371

F.3d 165, 174 (3d Cir. 2004) ("[T]he threshold question is whether the behavior of the

governmental officer is so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience." (citing Lewis, 523 U.S. at 847 n.8); Fantone v. Herbik, 528 F. App'x

123, 129 (3d Cir. 2013) (unpublished) (concluding that prisoner's thirty-five (35)-day stint in isolation did not violate his substantive due process rights because it was not conscience-shocking); Brayboy v. Kullner, No. 23-cv-01651, 2023 WL 8374739, at *3 (M.D. Pa. Dec. 4, 2023) ("Being put on cell restriction for thirty days falls far short of 'egregious' or conscience-shocking governmental behavior."), appeal dismissed, No. 24-1331, 2024 WL 5424500 (3d Cir. Oct. 11, 2024).  Moreover, to the extent that Myers's claims relating to the suspension of his IPIN are not covered by the First Amendment, this conduct is not conscience-shocking.  See, e.g., Horst v. Litz, No. 23-cv-00917, 2023 WL 4827077, at *4 (M.D. Pa. July 27, 2023) (concluding that prisoner-plaintiff failed to plead plausible substantive due process claim based on the refusal to give him "his 'one free call' on six consecutive days" because such conduct "falls far short of 'egregious' or conscience-shocking behavior."); Perkinson v. Allen, No. 19-cv-00019, 2020 WL 885996, at *4 (S.D. Ga. Feb. 24, 2020) (determining that plaintiff's "allegations that he was subjected to disciplinary actions, consisting of the denial of phone and visitation privileges, do not shock the conscience").  Accordingly, the Court will dismiss Myers's substantive due process claims for his failure to state a claim upon which relief may be granted.

### g.    Section 1983 Conspiracy Claims

As best the Court can discern, Myers asserts two (2) Section 1983 conspiracy claims: (1) against Mihal and Digby because they allegedly "conspired . . . to suspend his IPIN prior to the misconduct was [sic] completed," see (Doc. No. 1 at 4–5); and (2) against Heist, Harry, Gurley, and Varner because they allegedly "conspired . . . to deny his constitutional right to due process as well as his right to have his grievances litigated (First Amendment right to regress [sic]) where there is no misconduct rule covering prehearing sanctions such 'first daily activity,'" see (id. at 6).  Neither claim constitutes a plausible Section 1983 conspiracy claim.

"To state a claim for a [S]ection 1983 conspiracy, a plaintiff must allege that persons acting under color of state law conspired to deprive [them[ of a federally protected right." Adger v. Coupe, No. 21-1841, 2022 WL 777196, at *4 (3d Cir. Mar. 14, 2022) (citing Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 293–94 (3d Cir. 2018)); see also Jutrowski, 904 F.3d at 293–94 ("[T]o prevail on a conspiracy claim under § 1983, a plaintiff must [show] that persons acting under color of state law reached an understanding to deprive [the plaintiff] of [their] constitutional rights." (citation and internal quotation marks omitted)).  The plaintiff "must assert facts from which a conspiratorial agreement can be inferred."  See Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) (citations omitted); see also Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) ("To constitute a conspiracy, there must be a "meeting of the minds." (citation and internal quotation marks omitted)).  In other words, the plaintiff must allege "enough factual matter (taken as true) to suggest that an agreement was made," i.e., "plausible grounds to infer an agreement."  See Great W. Mining & Mineral Co., 615 F.3d at 178 (quoting Twombly, 550 U.S. at 556).  A plausible conspiracy "requires that the state actors took concerted action based on an agreement to deprive the plaintiff of [their] constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights."  See Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020) (citation and internal quotation marks omitted).

Here, Myers fails to allege facts establishing the requisite elements of a conspiracy claim, namely, that the above Defendants acted together in any way to deprive him of his rights.  Even accepting the allegations in the complaint as true and construing them in the light most favorable to Myers, the complaint lacks sufficient factual allegations showing that Mihal and Digby agreed to violate his constitutional rights in early April 2022 by suspending his IPIN prior to the

completion of his misconduct proceedings.  See (Doc. No. 1 at 4–5).  The only facts he alleges relating to these two (2) Defendants is that Digby issued the misconduct charge and Mihal investigated it.  (Id. at 5.)  These facts are wholly insufficient for this Court to infer that an agreement was made.  Twombly, 550 U.S. at 556 ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  More importantly, even if Mihal and Digby agreed to suspend Myers's IPIN prior to his misconduct hearing, he has not pleaded sufficient facts to show that this conduct constituted a constitutional violation.  Therefore, the Court will dismiss Myers's Section 1983 conspiracy claim against Dibgy and Mihal for his failure to state a claim upon which relief may be granted.

Regarding Myers's conspiracy claim against Heist, Harry, Gurley, and Varner, there are no factual allegations upon which to infer that these Defendants agreed to violate his constitutional rights.  Myers's use of the word "conspire," in itself, is insufficient.  See Hawley v. Salamon, No. 25-cv-00728, 2025 WL 2154362, at *6 (M.D. Pa. July 29, 2025) ("To state a claim for conspiracy [under Section 1983], a plaintiff must do more than recite talismanic phrases like 'conspire' and 'act in concert.'" (citations omitted)).  Accordingly, the Court will also dismiss Myers's Section 1983 conspiracy claim against Heist, Harry, Gurley, and Varner due to his failure to state a plausible claim for relief.

### h.    Claims Related to the Processing of Grievances

As far as the Court can discern, Myers asserts that Ritchey, Heist, Harry, Gurley, and Varner violated his constitutional rights by failing to address, dismissing, denying, or affirming

the dismissal or denial of his grievances.[14]  See (Doc. No. 1 ¶ 19).  To the extent that Myers

posits such claims, he fails to state a plausible claim for relief against these Defendants for

several reasons.

First, to the extent that Myers raises a Fourteenth Amendment due process claim based on

the processing of his grievances, he fails to state a plausible claim.  Prisoners have a

constitutional right to seek redress of grievances as part of their First and Fourteenth Amendment

rights of access to courts.  See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the

First and Fourteenth Amendments, prisoners retain a right of access to the courts."); Jutrowski,

904 F.3d at 294 n.17 (explaining that, typically, in the prisoner context, the right is "framed as a

due process right" (citations omitted)).  However, "this right is not compromised by [prison

officials' failure] to address these grievances."  See Booth v. King, 346 F. Supp. 2d 751, 761

(E.D. Pa. 2004); see also Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("When

the claim underlying the administrative grievance involves a constitutional right, the prisoner's

right to petition the government for redress is the right of access to the courts, which is not

compromised by the prison's refusal to entertain [their] grievance.").  "Access to prison

grievance procedures is not a constitutionally[]mandated right, and allegations of improprieties

in the handling of grievances do not state a cognizable claim under [Section] 1983."  Glenn v.

DelBalso, 599 F. App'x 457, 459 (3d Cir. 2015) (unpublished); see Burnside v. Moser, 138 F.

App'x 414, 416 (3d Cir. 2005) (unpublished) (affirming that "[i]nmates do not have a

constitutionally protected right to the prison grievance process").  In addition, the existence of a

---

[14]  Myers's only allegation against Ritchey is that he "was ordered to handle" Myers's grievance
against Brechbiel.  See (Doc. No. 1 ¶ 17).  Myers does not state what happened with this
grievance.  Thus, for purposes of this Memorandum, the Court presumes that Myers complains
about Ritchey failing to address his grievance.

grievance procedure "does not confer any substantive constitutional right upon prison inmates." See Hoover v. Watson, 886 F. Supp. 410, 418–19 (D. Del.) (quoting Brown v. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994)), aff'd, 74 F.3d 1226 (3d Cir. 1995). Moreover, "[t]he failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation."  See Okey v. Strebig, 531 F. App'x 212, 215 (3d Cir. 2013) (unpublished) (citing Flanagan v. Shively, 783 F. Supp. 922, 931–32 (M.D. Pa.), aff'd, 980 F.2d 722 (3d Cir. 1992)).  Therefore, Myers cannot maintain a due process claim based on the DOC's grievance process in general, the dismissal and denial of his grievances, the lack of positive responses to grievances or appeals from grievances, or how his grievances were handled.

Second, Myers's allegations are insufficient to show that Ritchey, Heist, Harry, Gurley, and Varner were personally involved in any violation of his constitutional rights.  As already explained, a plaintiff asserting a Section 1983 claim must allege that each defendant was personally involved in the act or acts that they claim violated their federally protected rights.  See Rode, 845 F.2d at 1207.  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not rely solely on respondeat superior, see Rode, 845 F2d at 1207 (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629

F.3d 121, 128 (3d Cir. 2010) (quoting <u>Monell v. Dep't of Soc. Servs. of New York</u>, 436 U.S. 658, 692 (1978)).

 In this case, Myers's allegations are based solely on Defendants' processing of his grievances. <u>See</u> (Doc. No. 1 ¶ 27 (alleging that "Heist, Harry, and/or Gurley, and . . . Varner affirmed the behavior of the previous mentioned Defendants"). The mere filing of a grievance is generally insufficient to impute the actual knowledge that is necessary to demonstrate a defendant's personal involvement in an asserted constitutional violation. <u>See</u> <u>Rode</u>, 845 F.2d at 1207–08 (finding that the filing of a grievance with the Governor-defendant's office was insufficient to demonstrate that the Governor himself had personal knowledge of the alleged wrongdoing). Additionally, grievances that complain of events that have already occurred and that are in the past are insufficient to show that defendants who respond to such grievances were personally involved in the asserted constitutional violations. <u>See</u> <u>Sims v. Wexford Health Sources</u>, 635 F. App'x 16, 19–20 (3d Cir. 2015) (unpublished) ("If an official's only involvement is the investigation or adjudication of an inmate grievance after the event giving rise to the grievance has happened, that is not considered to be personal involvement." (citing <u>Rode</u>, 845 F.2d at 1208)); <u>Robles v. Casey</u>, No. 10-cv-02663, 2011 WL 398203, at *2 (M.D. Pa. Feb. 3, 2011) (concluding that plaintiff had not shown personal involvement where "plaintiff's grievance only reported violations that had occurred in the past"); <u>see also</u> <u>Mincy v. Chmielsewski</u>, 508 F. App'x 99, 104 (3d Cir. 2013) (unpublished) ("[T]he District Court is correct that an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.") (citation omitted)).

Third, to the extent that Myers's alleges that Harry and Gurley are liable because they are responsible for supervising any other Defendants, he fails to state a claim.  To plausibly plead a supervisor's liability, Myers's allegations must satisfy one of two (2) theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  See A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

See Chavarriaga, 806 F.3d at 227 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).  For the second theory of supervisory liability—participating in, directing others to,

or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); Zigler v. Warren, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of [their] employees solely because [they are] a supervisor.").  Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."  See Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6).

In this case, Myers does not attempt to hold Harry and Gourley liable under Section 1983 based on the first theory of supervisory liability, i.e., a policy or practice, because he has not averred any facts about any policy or practice employed by Harry or Gurley.  Instead, he appears to focus solely on their alleged "affirm[ance]" of other Defendants' alleged misconduct and their role as supervisory officials, both of which are insufficient to show personal involvement.  See Lawson v. Banta, No. 20-3444, 2022 WL 1772997, at *2 (3d Cir. June 1, 2022) ("[A] defendant's knowledge of a constitutional violation after it occurred is insufficient to show that she personally directed that violation or had actual knowledge of it at the time it occurred." (citing Rode, 845 F.2d at 1208)); King v. Zamiara, 680 F.3d 686, 696–97 (6th Cir. 2012) ("Having the

right to control the offending employee is not enough, simply being aware of the misconduct is not enough, and even administrative approval of an action later found to be retaliatory, without more, is not enough."). Further, as already explained, his allegations relating to how these Defendants handled his grievances are insufficient to plausibly plead personal involvement in any constitutional violation. See Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (affirming district court's grant of summary judgement for supervisor who was "kept abreast" of an investigation, but did not direct his subordinate "to take or not to take any particular action"); Murray v. McCoy, No. 23-2582, 2024 WL 1328231, at *3 (3d Cir. Mar. 28, 2024) (explaining that prison superintendent's "awareness of [the plaintiff's] allegations concerning [the defendant correctional officer], without more, is insufficient to establish personal involvement"); Iwanicki v. Pa. Dep't of Corr., 582 F. App'x 75, 79 (3d Cir. 2014) (unpublished) ("[M]ere notification of a grievance does not allege sufficient personal involvement because it does not establish that the Defendants personally directed or acquiesced in the retaliation." (citation omitted)). Accordingly, the Court will dismiss Myers's Section 1983 claims to the extent that they are based on Ritchey, Heist, Harry, Gourley, and Varner's processing of his grievances for the failure to state a plausible claim for relief.

### 4.    Claim for Monetary Damages for Violating the Pennsylvania Constitution

As best the Court can discern, Myers attempts to assert a claim for monetary damages because Defendants allegedly violated his due process rights under the Pennsylvania Constitution.[15] (Doc. No. 1 ¶ 20.) The Court will dismiss this claim because there is no private

---

[15] To the extent that Myers also seeks injunctive relief, which could be an available form of relief for a violation of the Pennsylvania Constitution, see Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 688 (3d Cir. 2011) (unpublished) (stating that, "[a]lthough monetary relief is barred for claims under the Pennsylvania Constitution, equitable

right of action for monetary damages under the Pennsylvania Constitution. See Plouffe v. Cevallos, 777 F. App'x 594, 601 (3d Cir. 2019) (unpublished) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); Pocono Mountain Charter Sch., 442 F. App'x at 687 ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."); Jones, 890 A.2d at 1208 ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.").[16]

## C.    Leave to Amend

Having determined that all claims in Myers's complaint are subject to dismissal, the Court must determine whether to grant him leave to replead those claims in an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district

---

remedies are available" (citation omitted)); Jones v. City of Phila., 890 A.2d 1188, 1216 (Pa. Commw. Ct. 2006) (explaining that "[o]ther remedies, such as declaratory or prospective injunctive relief, could provide a remedy" under the Pennsylvania Constitution), the Court does not address it here because his request for injunctive relief is moot for the reasons stated above.

[16] The Court recognizes that due to the dismissal of Myers's federal claims, the Court may decline to exercise supplemental jurisdiction over his claims under the Pennsylvania Constitution. See 28 U.S.C. § 1367(c) (stating that a district court may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction"). The Court also recognizes that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." See Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995) (emphasis added). In this case, the Court finds that considerations of judicial economy, convenience, and fairness to the parties, warrants the exercise of supplemental jurisdiction over Myers's state-law claims. In particular, it is much more convenient, economical, and fair to the parties for the Court to resolve Myers's meritless claim under the Pennsylvania Constitution here.

courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile.").  "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the Court's discussion above, it would be futile to allow Myers to replead his (1) Section 1983 official-capacity claims for monetary damages, (2) request for injunctive relief, (3) Section 1983 individual-capacity Fifth Amendment and Fourteenth Amendment due process claims, (4) Section 1983 individual-capacity claims relating to the processing of his grievances, (5) claim for monetary damages for any alleged violation of the Pennsylvania Constitution, and (6) request for compensatory damages under Section 1983.  On the other hand, the Court will allow Myers to file an amended complaint concerning (1) his Section 1983 individual-capacity claim against Schneck, (2) Section 1983 First Amendment claims, and (3) Section 1983 conspiracy claims, to the extent that he can allege any facts establishing a plausible claim for relief.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Myers's IFP Application, deem withdrawn his motion to commence, dismiss his complaint with prejudice in part and without

prejudice in part, and grant him leave to amend as to only those claims for which amendment would not be futile, as identified in the foregoing discussion.  An appropriate Order follows.[17]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[17]  This Order will provide Myers with additional instructions on the filing of an amended complaint.